UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FORREST G. QUINN,

          Plaintiff,

    v.

ANVIL CORPORATION, *et al.*,

          Defendants.

No. C08-0182RSL

ORDER GRANTING ANVIL DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS

**INTRODUCTION**

This matter comes before the Court on the "Supplemental Motion by Anvil to Dismiss Plaintiff's Lawsuit." Dkt. # 119. Defendants Anvil Employee Stock Ownership Trust, Owen Olsen, P.K. Connor, John Macpherson, and Gene Anderson joined in the motion. Dkt. # 121. The Anvil defendants argue that because plaintiff is no longer a shareholder of Anvil Corporation, he cannot maintain a derivative suit, and this action should be dismissed. Plaintiff opposes the motion to dismiss on factual and legal grounds.

**BACKGROUND**

On February 2, 2008, plaintiff initiated this action against Anvil Corporation, four of its directors, its chief financial officer, its outside appraiser, and the Anvil Employee Stock Ownership Trust. Plaintiff has asserted claims for breach of fiduciary duty, breach of contract, and negligence on behalf of Anvil Corporation. In particular, plaintiff alleges that defendants

engaged in a scheme to undervalue Anvil's stock between 1999 and 2006, to the detriment of Anvil and its shareholders.[1]

On July 15, 2008, a notice was sent to each Anvil shareholder of record, including plaintiff. The notice explained that the Board of Directors was recommending amendments to the Articles of Incorporation which, if approved by the shareholders, would result in a reverse stock split of the corporation's shares. The shareholders were told that the amendments were intended to make Anvil Corporation 100% employee-owned by pushing out persons who held fewer than 60 shares: Forrest Quinn was specifically identified as one of those persons. The shareholders approved the amendment to the Articles of Incorporation, including the following provision:

> 4. A reverse stock split of the corporations's Class A Common Stock shall be effected upon filing of these Articles of Amendment by the Secretary of State whereby each sixty (60) shares of Class A Common Stock of the corporation outstanding or issuable at such time shall be automatically converted into one (1) share of common stock of the corporation. No fractional shares shall be issued in connection with the foregoing reverse stock split, and if any shareholder of the corporation would otherwise be entitled to receive a fractional share as a result of the reverse stock split, the corporation shall make an adjusting cash payment to the shareholder in lieu of such fraction. . . .

The Articles of Amendment were filed with the Secretary of State on August 5, 2008.

## DISCUSSION

A. CONTINUOUS OWNERSHIP REQUIREMENT

Plaintiff has not asserted any direct claims against defendants. He specifically

---

[1] Plaintiff asserts that defendants' statement of the facts was misleading in certain respects. For purposes of this motion, the Court assumes that Anvil's stock may, in fact, be undervalued, that plaintiff and his parents were, at all relevant times, shareholders of Anvil Corporation, and that the Board of Directors controlled the information provided to shareholders prior to the August 5, 2008, vote. Neither these facts nor the details regarding the settlement of earlier claims is relevant to the standing issue currently before the Court.

ORDER GRANTING ANVIL DEFENDANTS'
MOTION TO DISMISS - 2

asserts derivative claims on behalf of Anvil Corporation (Verified Complaint at ¶ 42) and seeks to recover damages suffered by the corporation. Claims brought by a shareholder to vindicate rights that could properly be asserted by the corporation are subject to the requirements of Fed. R. Civ. P. 23.1.[2] In order to bring a derivative shareholder suit, plaintiff must be a shareholder of the corporation and must "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Rule 23.1(a). The Ninth Circuit has held that the shareholder must not only own shares at the time of the wrongful acts, but must maintain ownership of the stock throughout the litigation. "The latter requirement, although not expressly stated in the rule, has been inferred from its language. However, as a practical matter, the continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own." Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983) (internal footnote and quotation marks omitted).

B. PLAINTIFF'S SHAREHOLDER STATUS

Recognizing that the lack of continuous stock ownership may pose a problem in this derivative action, plaintiff raises a number of arguments designed to show that the reverse stock split was invalid under state law because "the change was procedurally flawed or was somehow fraudulent." Sound Infiniti, Inc. v. Snyder, 145 Wn. App. 333, 343 (2008). Plaintiff's first argument is that he still owns stock in Anvil Corporation because his shares were not properly redeemed. Under Washington law, "[s]hares that are issued are outstanding shares

---

[2] The Federal Rules single out shareholder derivative actions for special treatment "because the law has historically been particularly wary of allowing shareholders to sue on their corporation's behalf. Because of the fear that shareholder derivative suits could subvert the basic principle of management control over corporate operations, courts have generally characterized shareholder derivative suits as a remedy of last resort." Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1463 (9th Cir. 1995) (internal quotation marks omitted).

ORDER GRANTING ANVIL DEFENDANTS'
MOTION TO DISMISS - 3

until they are reacquired, redeemed, converted, or cancelled." RCW 23B.06.030(1). These terms are not defined, and plaintiff makes no attempt to apply them to the transaction described in the Articles of Amendment. Ignoring the definite and clear statement that "[n]o fractional shares shall be issued in connection with the . . . reverse stock split," plaintiff claims that he obtained a fractional share on or about August 5, 2008. Based on this bald assertion, plaintiff then argues that Anvil has not successfully redeemed his fractional share in the manner set forth in RCW 23B.06.030(3). After reviewing the Articles of Amendment, however, the Court concludes that the transaction is most accurately characterized as a cancellation of plaintiff's fifty shares as that term is used in RCW 23B.06.030(1). Plaintiff's shares were not converted into a new share, either whole or fractional. Nor is there any indication that Anvil was attempting to redeem or otherwise reacquire plaintiff's fifty shares. Rather, those shares were simply defined out of existence. The certificates plaintiff may or may not hold no longer represent an ownership interest in the company: plaintiff is therefore no longer a shareholder of Anvil Corporation.

As a second line of attack, plaintiff alleges certain procedural irregularities in the way in which the Articles of Amendment were approved. To the extent that such irregularities could invalidate the shareholder vote and unwind the reverse stock split, they are relevant to a determination of whether plaintiff is still a shareholder. Having reviewed the arguments and evidence provided and having heard from counsel at oral argument, the Court finds that the irregularities asserted by plaintiff are either unsupported or immaterial. Plaintiff provides no evidence or case law establishing that the participants in Anvil's Employee Stock Ownership Plan are shareholders entitled to notice under RCW 23B.07.050(1), that stock that was subject to a 1996 Redemption Agreement was a "class" or "series" of stock entitled to a separate vote under RCW 23B.10.040, or that only one of the seven directors was authorized to participate in the decision to present the Articles of Amendment to the shareholders. Even if plaintiff were

ORDER GRANTING ANVIL DEFENDANTS'
MOTION TO DISMISS - 4

entitled to vote separately as a holder of "Option Stock" and even if the Board of Directors' action was somehow improper, there is no indication that the outcome of the shareholder vote on August 5, 2008, would have been materially altered.

C. ALLEGATIONS OF UNLAWFUL OR FRAUDULENT CONDUCT

Plaintiff also asserts wrongdoing on the part of defendants in carrying out the reverse stock split. Some of these arguments could give rise to a separate cause of action, unrelated to the derivative claims pending before the Court. For example, construed liberally and with all possible inferences drawn in plaintiff's favor, plaintiff's argument regarding Anvil's failure to redeem shares in accordance with RCW 23B.06.030(3) might form the basis for a claim of conversion. Similarly, plaintiff's arguments based on the 1996 Redemption Agreement between his uncle and Anvil Corporation suggests possible breach of contract claims. Because these potential claims would not result in the unwinding of the reverse stock split (and may be barred by the exclusivity provisions of RCW 23B.13.020(2)), they are irrelevant to the standing issue raised by defendants.

Plaintiff has also alleged that defendants engaged in fraud in their efforts to obtain shareholder approval of the reverse stock split. Plaintiff had opportunities to produce evidence in support of this accusation when he filed his motion for a temporary restraining order and in response to this motion to dismiss. He has not done so, instead arguing (a) that a protective order prevented him from providing evidence that the buy back price offered to shareholders was fraudulently low and (b) that he was unable to conduct discovery regarding what the shareholders were told before and during the August 5, 2008, meeting. Until this point in the litigation, the protective orders entered in Whatcom County proved no impediment to plaintiff's litigation strategy. The orders prohibited the dissemination of documents designated as confidential, as well as summaries thereof, and yet plaintiff felt no compunction about summarizing the documents for the Court throughout this litigation. See, e.g., Dkt. # 22. In

ORDER GRANTING ANVIL DEFENDANTS'
MOTION TO DISMISS - 5

addition, plaintiff has submitted as exhibits documents subject to the Whatcom County protective orders on at least three occasions utilizing this Court's seal provisions. Dkt. # 43, 91, and 112. Given this history and the fact that plaintiff has never asked this Court (or, as far as the record shows, the Whatcom County court) to lift the protective orders for purposes of this litigation, it is hard to credit plaintiff's assertion that he has evidence of fraud and is simply unable to produce it. Rather, it appears that plaintiff wants to use this derivative action to launch an investigation of the shareholder vote to see whether fraud occurred: he has requested contact information for all shareholders and beneficiaries in the hope that depositions will show that one or more of them was misled. Absent some credible reason for suspecting foul play, however, the Court will not turn this derivative suit into a fishing expedition. Plaintiff has not supported his allegations of fraud and he has not shown that the reverse stock split was invalid or otherwise subject to unwinding. His claim of continuing stock ownership must, therefore, fail.

D. EXCEPTIONS TO THE CONTINUOUS OWNERSHIP REQUIREMENT

Having ascertained that plaintiff is no longer a shareholder of Anvil Corporation, the Court must determine if any exception to the continuous ownership requirement of Rule 23.1 applies. Plaintiff relies on Lewis v. Anderson, 477 A.2d 1040 (Del. 1984), for the proposition that continuous ownership is not necessary if the corporation acted for the purpose of depriving the shareholder of standing to maintain an existing derivative suit. Assuming, for purposes of this argument, that Lewis supports plaintiff's position, Federal Rule of Civil Procedure 23.1 governs this issue, not Delaware's Chancery Court Rule 23.1 or the cases interpreting it. See Kona Enters., Inc. v. Estate of Bishop, 179 F.3d 767, 769 (9th Cir. 1999) (finding that the continuous ownership requirement is procedural and is governed by the federal rules in diversity actions). Plaintiff offers no Ninth Circuit authority establishing an exception to the continuous ownership requirement where a corporation acts to avoid a pending or threatened derivative suit. Given the language of Rule 23.1 and the Ninth Circuit's unqualified enunciation of the

continuous ownership requirement (see, e.g., Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983)), the Court finds that such an exception is neither authorized nor warranted.

To the extent that state substantive law is relevant to the issue of whether plaintiff still has standing to pursue this derivative action, Washington law supports dismissal. The Washington State Court of Appeals has determined that a pending derivative suit will be dismissed if a reverse stock split strips the putative plaintiff of his corporate shares. Sound Infiniti, Inc. v. Snyder, 145 Wn. App. at 350-51. Plaintiff's attempts to distinguish Sound Infiniti are unavailing: the factual and legal issues considered by the state court are strikingly similar to those raised here and lead to the same result. Because plaintiff no longer has a proprietary interest in Anvil Corporation, the Court finds that he cannot adequately and fairly represent the interests of its shareholders. Plaintiff's shareholder action must, therefore, be dismissed under Rule 23.1 and the relevant case law.

## CONCLUSION

For all of the foregoing reasons, the Anvil defendants' supplemental motion to dismiss (Dkt. # 119) is GRANTED. Plaintiff's claims against Anvil Corporation, Anvil Employee Stock Ownership Trust, Owen Olsen, P.K. Connor, John Macpherson, and Gene Anderson are hereby DISMISSED.

Dated this 31st day of October, 2008.

Robert S. Lasnik
United States District Judge

ORDER GRANTING ANVIL DEFENDANTS'
MOTION TO DISMISS - 7